DAVIS (MAYHEW v.). See Case No. 9,347.

DAVIS (MORSE v.). See Case No. 9,855.

DAVIS (MYERS v.). See Case No. 9,986.

DAVIS (NATIONAL BANK OF MADISON v.). See Case No. 10,038.

---

## Case No. 3,643.

DAVIS et al. v. NEW BRIG.

[Gilp. 473.][1]

District Court, E. D. Pennsylvania. Sept. 1, 16, 1834.

ADMIRALTY JURISDICTION—MARITIME LIENS—REPAIRS AND SUPPLIES — DOMESTIC AND FOREIGN VESSELS—LIENS BY STATE LAWS — PRACTICE IN STATE AND FEDERAL COURTS.

1. The subject matter of the controversy generally determines the question of admiralty jurisdiction.

[Cited in The Calisto, Case No. 2,316; Cox v. Murray, Id. 3,304.]

2. The provisions of the act of 24th September, 1789 [1 Stat. 73], which give to the district courts original cognisance of all civil causes of admiralty and maritime jurisdiction, comprehend all maritime contracts, and those which relate to the navigation, business or commerce of the sea, and the building, repairing or supplying of vessels.

[Cited in Todd v. The Euphrates, Case No. 14,074; Re Metzger, Id. 9,511; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 421; Parmlee v. The Charles Mears, Case No. 10,766; The Richard Busteed, Id. 11,764.]

3. Workmen, materialmen, and persons furnishing repairs and necessaries to a vessel, in a port of a state to which she does not belong, have a lien on the vessel, which they may enforce by a suit in rem in the admiralty.

[Cited in Cole v. The Atlantic, Case No. 2,976; Leland v. The Medora, Id. 8,237; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 390; Thomas v. Osborn, 19 How. (60 U. S.) 28.]

4. Workmen, materialmen, and persons building a vessel, or furnishing her with repairs or necessaries, in a port or state to which she belongs, have no implied lien on the vessel, and cannot enforce one by a suit in rem in the admiralty, unless such a lien is given under the provisions of a state law.

[Cited in The Marion, Case No. 9,087; Jenkins v. The Congress, Id. 7,264; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 390; The Alida, Case No. 199.]

5. Where courts of a state and the United States have concurrent jurisdiction, the mode of trial is to be regulated according to the law, usage and practice of that court in which the suit may be instituted.

[Cited in Waring v. Clarke, 5 How. (46 U. S.) 500; Hill v. The Golden Gate, Case No. 6,491.]

6. Where a lien on a vessel is given by a state law, the district court rightfully obtains jurisdiction, and may exercise it: not according to the provisions of the state law, but according to the mode of proceeding in the admiralty.

[Followed in Boon v. The Hornet, Case No. 1,640. Cited in The Harvest, Id. 6,175; Crapo v. Allen, Id. 3,360; Ludington v. The Nucleus, Id. 8,598; The Celestine, Id. 2,541; People's Ferry Co. v. Beers, 20 How. (61 U. S.) 402; Marsh v. The Minnie, Case No. 9,117; The Edith, Id. 4,283; Petrie v. The Coal Bluff No. 2, 3 Fed. 534; The Rapid Transit, 11 Fed. 332. Distinguished in Cunningham v. Hall, Case No. 3,481.]

7. Workmen and materialmen having a lien on a vessel, under the provisions of a state law, have their election to enforce it either in the district court or a state court; but having made their election, the defendant must follow them into the court chosen, and submit to the mode of proceeding and trial used in that court.

8. The lien of workmen and materialmen on a vessel attaches when the work and materials are furnished, and cannot be afterwards divested by the act of one of the parties.

9. Workmen and materialmen having a lien on a vessel, may enforce it before the vessel is finished or sold.

10. Workmen and materialmen having a lien on a vessel, under the provisions of a state law, which makes a vessel liable to them for all debts contracted by the masters or owners thereof for work and materials, do not lose their lien on a transfer of the vessel to another owner, or on a change of the master.

11. A usage, to affect the lien of workmen and materialmen on a vessel, must be clearly and uniformly well known and understood among the parties.

[Cited in Pierpont v. Fowle, Case No. 11,152.]

12. Where a libellant, in a suit in rem in the admiralty, establishes a clear legal right to a condemnation and sale, there is no discretionary power in the court to refuse or postpone an order of sale.

William S. Davis and George W. Lehman filed a libel in the district court of the United States for the eastern district of Pennsylvania, against a new brig, not completely finished and ready for sea. They alleged that they had, at the request of the owner, between the 6th September, 1833, and the 7th

---

[1] [Reported by Henry D. Gilpin, Esq.]

July, 1834, furnished and delivered certain materials, which they enumerated, necessary for the construction of the vessel; and that they had also performed the work and labour necessary for building and equipping the vessel for the purposes of navigation. Their libel was filed for the recovery of the value of these materials, work and labour. Process of attachment being issued, pursuant to the prayer of the libel, the vessel was taken into custody by the marshal. The owner, Jacob Tees, made no answer to the libel, and did not deny any of its allegations, but put in a plea to the jurisdiction of the court, on the ground that the brig being a domestic and not a foreign vessel, the case was not within the cognizance of the court; and that if liable to any proceedings in rem, they must be instituted in the state courts, and under the provisions of the state laws.

On the 24th August, 1834, the case came on to be heard before Judge Hopkinson. It was argued by

Mr. Hazlehurst, for respondent.

This being the case of work and materials furnished for a domestic ship, the court has no jurisdiction over it by the general admiralty law. The remedy in such a case is derived altogether from the local laws of Pennsylvania. By the act of assembly of 27th March, 1784 [2 Smith's (Pa.) Laws, 95], at which time the admiralty was a state court, jurisdiction is granted to it for the recovery of debts for work done and materials furnished to any ship or vessel built or repaired within this state; and such vessels are declared to be liable for such debts, in preference to any other debts due from the owner. By the act of assembly passed on the 9th February, 1793 [3 Smith's (Pa.) Laws, 89], when the admiralty court of the state was abolished, and admiralty jurisdiction was vested in the courts of the United States, the remedies given by the former act for the recovery of debts due for work and labour furnished to vessels, were transferred to the court of common pleas of the state, and a court of admiralty has no power over a case for materials or work on a domestic ship; the remedy ought to have been sought in the courts of the state, according to the law of the state, which gives it. Even if the law of the state shall be considered to give the jurisdiction to this court, then it must be here exercised, under the qualifications and conditions provided for by the act of assembly, according to which all questions of fact are to be tried by a jury. 1 Story, Laws, 56; The General Smith, 4 Wheat. [17 U. S.] 438; 3 Kent, Comm. 169.

Mr. Bayard, for libellants.

This court and the common law courts have concurrent jurisdiction in all cases, except those of prize. This is a case of "admiralty and maritime jurisdiction," under the constitution and laws of the United States. That jurisdiction depends on the

subject matter. The act of Pennsylvania of 27th March, 1784, expressly gives a lien. When the legislature of Pennsylvania transferred this remedy for the recovery of these debts, from the court of admiralty of the state, which no longer existed, to the courts of common law, they were bound by the constitution to call a jury to ascertain any disputed facts in a case; but the constitution of the United States secures the trial by jury only in suits at common law; but not in those at equity or in the admiralty. The General Smith, 4 Wheat. [17 U. S.] 438, 443; The Robert Fulton [Case No. 11,890]; The Jerusalem [Id. 7,294]; Stevens v. The Sandwich [Id. 13,409].

HOPKINSON, District Judge. The libel, in this case, sets forth that at sundry times, between the 6th day of September, 1833, and the 7th day of July, 1834, at the request of Jacob Tees, who was employed in building a new brig on the Delaware river, in the said district, the libellant did provide, furnish, and deliver certain enumerated materials, and did perform certain work and labour for the use of the said brig, which were necessary in the building, fitting, furnishing, and equipping her for her safety, and the navigation of the high seas. Particular accounts of the said work and materials and their cost and value are annexed to the libel. It is further set forth, that although the brig is not yet completely furnished, and has not yet proceeded to sea, nor received any name, whereby to distinguish her, the owners are about to send her out of the district, as the libellants fear, without paying for the materials, work, and labour, furnished and performed by the libellants; and that they have not accepted any other security for their said claims than their liens on the said brig, which they have not consented to release. The prayer is for process of attachment against the brig. and a decree of condemnation for the payment of these claims. The defendant, Jacob Tees, has put in no answer to the libel, nor denied any of its charges, but leaves the case of the libellants to stand as they have stated it. But assuming or admitting the facts set forth in the libel, he alleges that this court has no jurisdiction over the matter of complaint, to grant the relief prayed for, and ought not to take further cognisance of it, because, that the new brig referred to in the libel has been built at the city of Philadelphia, where the said owner resides; that by an act of the legislature of the state of Pennsylvania, passed on the 27th March, 1784, and a supplement thereto, passed on the 9th February, 1793, it does not pertain to this court, nor is it within its cognisance at all to interfere or hold plea respecting the said brig; but that the said cause of action, if any accrued to the libellants, accrued to them at Philadelphia, within the jurisdiction of the district court of the city and county of Philadelphia, and not within the jurisdiction of the district court

of the United States, for the eastern district of Pennsylvania.

The ground of the objection to the jurisdiction of this court is that the brig in question is a domestic vessel, belonging to owners residing in this district, where she was built, and the work and materials for her use furnished; that no lien is given by the general maritime law upon the brig for work and materials so furnished; and consequently that this court had no authority to enforce this claim against or upon the body of the vessel. The subject matter of the controversy generally determines the question of jurisdiction The act of congress constituting the courts of the United States, gives to them cognisance of "all civil cases of admiralty and maritime jurisdiction;" this grant certainly comprehends all maritime contracts; and a contract which "relates to the navigation, business, or commerce of the sea," is of that description. In the case of De Lovio v. Boit [Case No. 3,776], Judge Story says, that "all civilians and jurists agree that in this appellation (maritime contracts) are included, among other things, contracts for maritime service in the building, repairing, supplying, and navigating ships." In the case of The Jerusalem [Id. 7,294], the same judge repeats this doctrine as to the general jurisdiction of the court of admiralty over all maritime contracts, and, particularly, in favour of materialmen. But it is obvious that this does not decide our case, as the jurisdiction of the court over the case or claim may be admitted, and the relief now prayed for denied. The proceeding here is in rem, against the brig, and not in personam, against the owners or persons making the contract. This brings us to the question, whether, in the case of a domestic ship built or repaired where the owner resides, materialmen have a lien upon her as a security for their payment, for if they have such lien, there can be no doubt that it may be prosecuted and enforced in this court. Judge Story, in the case referred to, says that there are great authorities on both sides of the question, though "upon principle, independent of common law authorities, there is not much room to doubt." He adds, that "be this as it may, it cannot affect the question of the jurisdiction of the admiralty in such cases, for that stands altogether independent of the doctrine of liens, and may be enforced as well by process in personam, as in rem."

The supreme court of the United States, the authority which must govern the judgment of this court, has, happily, afforded us a guide for our opinion. I refer to the case of The General Smith, 4 Wheat. [17 U. S.] 438. The ship was an American vessel, and was formerly the property of Mr. Stevenson, a merchant of Baltimore, and a citizen of the United States. Whilst she so belonged to Stevenson, the libellant, a ship chandler of Baltimore, furnished, for her use, various articles of ship chandlery, to equip and furnish her, it being her first equipment, to perform a voyage to a foreign country. The ship departed from Baltimore on the voyage, without any express assent or permission of the libellant, and also without objection on his part, or any attempt to detain her, or to enforce any lien, which he had against her for the articles furnished. She continued to be the property of Stevenson during the voyage, and after her return, and was not sold until the 3d October, 1816, when, being obliged to stop payment, he executed an assignment, to the claimants of his property including the ship for the payment of duties to the United States, and for the satisfaction of other creditors. Another libel was filed 11th November, 1816, by the administratrix of Thomas Cockrill, deceased, for iron materials and work furnished to prepare the said ship for navigating the high seas. The district court of Maryland ordered the ship to be sold, and decreed that the libellants should be paid out of the proceeds the amount of their demand for materials furnished. The circuit court affirmed this decree, pro forma, and the cause was brought by appeal to the supreme court.

Mr. Pinckney, for the appellants, admitted the general jurisdiction of the district court, as an instance court of admiralty, over suits of materialmen in personam and in rem, but denied that a suit in rem could be maintained in this case, because the parties had no specific lien on the ship for supplies furnished in the port to which the ship belonged. That in the case of a domestic ship, mechanics have no lien upon the ship itself for their demands, but must look to the present security of the owner. Had the suit been in personam, there would have been no doubt of the jurisdiction, but there being no such local law, or specific lien to be enforced, there could be no cause to maintain a suit in rem. This is the same ground now taken in support of the plea in our case.

Judge Story, in delivering the opinion of the court, declares, that the admiralty rightfully possesses a general jurisdiction in cases of materialmen; and that had the suit been in personam, there would have been no hesitation in maintaining the jurisdiction of the district court; but that when the proceeding is in rem, to enforce a specific lien, it is incumbent on those who seek the aid of the court, to establish the existence of such lien in the particular case. That in case of repairs or necessaries furnished to a foreign ship, in a port of a state to which she does not belong, the general maritime law gives the party a lien on the ship itself for his security, and he may well maintain a suit in rem in the admiralty to enforce the right. But in respect to repairs and necessaries in the port or state to which the ship belongs, the case is governed by the municipal law of the state; and no lien is implied unless it is recognised by that law. These doctrines, so clearly explained, are confirmed by the same court in the case of Peyroux v. Howard, 7 Pet. [32 U. S.] 324.

The law of the case being ·thus settled,. the question that remains for us is, whether by the local law of Pennsylvania, the libel-·lants have a lien on the brig· libelled, for the satisfaction or security of their claims. Of this there seems to be no possible doubt, either on the words of the act of the legislature of the state, or the unvaried practice under it, by which proceedings, in the manner prescribed by the act. have been prosecuted in rem, against the body and tackle of the vessel, from the time of passing the law to the present day. By the act of 27th March, 1784 [supra], it is enacted. that "ships and vessels of all kinds, built, repaired and fitted within this state, are hereby declared to be liable and chargeable for all debts contracted by the masters or ·owners thereof, for or by reason of any work done or materials found or provided by any carpenter, blacksmith, mast-maker, boat-builder, block-maker, rope-maker, sailmaker, rigger, joiner, carver, plumber, paint-·er or ship chandler, for. upon and concerning the building, repairing, fitting, furnishing and equipping such ship or vessel. in preference to any and before any other debts due and owing from the owners thereof." If any thing can add any strength to this language in creating a lien. it will be found in the circumstance. that the language used in the New York statute, on the same subject, is substantially the same, declaring that the vessel shall be liable, and no doubt has been entertained, in the construction of that statute, that it gives a lien. These observations are made, although they may seem unnecessary, because it has been said in the argument for the defendant, that the act of Pennsylvania does not raise a lien for the materialmen. but only gives them a preference over other creditors. This law of Pennsylvania was passed antecedent to the adoption of the present constitution of the United States, and when the state had her own court of admiralty, and directs that the libel shall be filed in that court against such ship or vessel, and her tackle, "whereupon process shall issue, and such proceedings shall be had as are usually had in the courts of admiralty for the recovery of mariners' wages, and other debts actually contracted upon the high seas, and within the jurisdiction of the court of admiralty." So the law of Pennsylvania stood for the creation of the lien. and the manner of enforcing. it, when she had a court of admiralty. By the constitution of the United States, and the· provisions of the judiciary .act, passed in pursuance of it, cognisance was given to the courts of the United States, ·of "all cases of admiralty and maritime jurisdiction," and the state admiralty courts ceased to exist. It became necessary for Pennsylvania. still believing that "the business of ship-building was a very important ·branch of the commerce of the state," to provide some other jurisdiction and means for "securing the persons employed in building and fitting ships or vessels for sea, by making the body and tackle of such ships and vessels liable to pay the several tradesmen, employed in building and fitting them, for their work and materials." A law was therefore passed on the 9th February. 1793 [supra], enacting that the libel authorised by the former act to be filed in the court of admiralty of this state, may be filed in the office of the prothonotary of the common pleas of the county, who is to issue an attachment directed to the sheriff, to arrest and detain the vessel, and the court is to take stipulations. Thus the whole proceeding to enforce this lien is transferred from the admiralty to a common law court, in which questions of fact have always been tried by a jury, and the constitution of Pennsylvania expressly declares that "trials by jury shall be as heretofore." In conformity with this declaration, the act of 9th February, 1793, instead of directing, as the former act did, that "such proceedings shall be had as are usually had for the recovery of mariners' wages," provides that "where, in any cases occurring under the said act, questions of fact shall arise, an issue or issues shall be joined by the parties under the direction of the court, and shall be tried by jury."

The argument, then, of the defendant in this case, in support of his plea to the jurisdiction of the court, is reduced to this: That as this court has cognisance of the case by reason of the lien given by the local law of Pennsylvania, the jurisdiction of this court must be governed and exercised according to the provisions of that local law, and as it is exercised by the courts of Pennsylvania; that is, by a trial of questions of fact by a jury. Now if this argument were sound, it would not support the plea of the defendant, which objects, not to the course of proceeding in this court; nor to the mode of trial; nor suggests that there are any questions of fact for a jury to pass upon; but broadly to the entertainment of the suit by this court in any way, or by any mode of trial. But the argument is not sound. When Pennsylvania had her court of admiralty, to which cognisance of these cases were given, she said nothing, in her act giving this lien and prescribing the manner of enforcing it, of a jury, but the whole proceeding and trial were to be had according to the usage of the admiralty courts for the recovery of mariners' wages, and other debts actually contracted on the high seas. When her court of admiralty ceased to exist, and she was desirous to continue this security and remedy to mechanics and tradesmen furnishing work and materials for a ship, she was obliged to bring them into her common law courts, and, of course, to conform the proceedings and trial to the usage of those courts. But when the case comes rightfully into a court

of admiralty, it is to be conducted. tried and decided according to the usage and practice of that court. This court obtains its jurisdiction over the case, not by any grant, express or implied, from the legislature of Pennsylvania; that could not be: but incidentally, as a consequence of the lien, given by the local law of that state, upon the vessel for the satisfaction or security of the debt or claim of the libellants. The jurisdiction being thus rightfully obtained over the claim or cause of action, it must be exercised, not as such a claim would be prosecuted in the state court having also jurisdiction over it, but in the manner in which cases are prosecuted and tried in a maritime court. Each court exercises its jurisdiction in its own way, according to its own law of proceeding. The jurisdiction is concurrent; the mode of trial to be regulated by their respective usages and practice. So it is in other cases. The common law courts of the state have a concurrent jurisdiction with the maritime courts of the United States for the recovery of seamen's wages, for damages for assaults and batteries, and other trespasses committed on the high seas. If the party in such a case goes into a state court, his cause is tried by a jury, as other cases are tried there; but if he comes into the admiralty, he must submit himself and his cause to the judge, because such is the law and usage of that court. So the mechanic or material-man, who has built, repaired, or furnished supplies for a ship, has his election, in Pennsylvania, to go into the state court, or into the district court of the United States, to prosecute and recover his claim; and, having made his election, the defendant must follow him into the court he has chosen, and both must submit to the course of proceeding and trial used in that court.

The plea to the jurisdiction was overruled. The plea to the jurisdiction having been overruled, the respondent put in an answer to the libel, to which there was a general replication. The answer admitted the amount claimed by the libellant, Davis, but denied the amount claimed by the libellant, Lehman; upon which, evidence was given in support of the account. The respondent also alleged a special agreement, set forth in the answer, according to which, it was declared that the vessel was built on a speculation, and that the mechanics employed upon her, as well as the persons furnishing materials, agreed that she should be sold for the benefit of all concerned, when she was finished; and, therefore, that the libellants had relinquished their right to proceed against her, and force a sale for their own advantage, before she was completed. Evidence was offered to sustain this allegation; but it failed to do so. The counsel of the respondents admitted that the special agreement had not been established, and that the disputed account had been well proved.

Mr. Hazlehurst, for respondents.

1. The contract is not such as will give the claimant a lien, under the act of assembly of Pennsylvania. 2. If it be such a contract, it must be construed with reference to the custom of the port. 3. The court will not decree a sale, where it is apparent it will produce a sacrifice of the property. It is altogether a question for the discretion of the court. By the act of 27th March, 1784 (2 Smith's [Pa.] Laws, 95), it is enacted, "that ships and vessels of all kinds, built, repaired and fitted within this state be, and they are hereby declared to be, liable and chargeable for all debts contracted by the masters or owners thereof." It is contended that the respondent, Jacob Tees, was neither master .nor owner of this brig; that the contracts in question were made with and by him, and the debts were due from him to the libellants. In this case, a sale has been made of the brig, after the materials furnished, to Charles Harper and others. The argument is, that they are the present owners of the brig; that no contract was made with them; and that Tees, with whom the contracts were made, is not the owner. Collings v. Hope [Case No. 3003]; Stultz v. Dickey, 5 Bin. 287; Steinmetz v. Boudinot, 3 Serg. & R. 541.

Mr. Bayard, for libellants, in reply.

This is a right claimed under an act of assembly, which specifies exactly the circumstances in which it arises. They are two. 1. The debt must be contracted with the master or owners of the vessel. 2. It must be for work done, or materials furnished, by a person within the several classes specified in it. These libellants are within the description; they contracted with the respondent, who was the owner at the time of the contract; they worked on the vessel, and furnished materials for her. There has been no evidence of any usage by which their claim was impaired; but if there were any, it could not operate to deprive them of a remedy given by law; they must have assented to such an effect; but there is no circumstance showing either an express or implied assent. As to the exercise of a discretion by the court, which is to deprive these workmen of a legal remedy, no ground for it has been shown, and it would require a case of extreme necessity to justify it.

On the 16th September, Judge HOPKINSON delivered the following opinion:

The objections to the account of George W. Lehman, are withdrawn, and it is agreed that no proof has been given to support the special agreement alleged in the answer. Other questions of law have been raised to defeat the claim of the libellants, at least, in this mode of proceeding. It is alleged that, by the act of assembly under which the lien is claimed, and without which no proceeding can be sustained against the body of the ves-

sel, this suit cannot be entertained, by the court, in its present form. That it now appears that the brig was sold by the respondent, Jacob Tees, who built her, to Charles Harper and others, who are now the owners; that with them no contracts for these materials were made by the libellants; and that Tees, with whom the contract was made, is no longer the owner, nor was he so, when this libel was filed. On these facts it is contended, that, as the act of assembly gives the lien or charge upon the vessel, only for the payment or security of debts contracted by the masters or owners thereof with the mechanics and materialmen, and as no such contract was made with the present owners, the provisions of the act of assembly do not apply to this case. The injustice of this argument is so manifest and the frauds it would sanction so destructive of the objects of the law, that I could not hesitate a moment to reject it. Jacob Tees, the builder and owner of this brig when the contract was made, is the claimant and respondent to this libel; he is the party disputing the right of the libellants in this court. He does not deny his ownership, or put that fact in issue; on the contrary he claims the brig as her owner. But independently of this state of the case on the face of the pleadings, can it be supported that the lien and security given by the act of assembly to mechanics who build a vessel, and to the men who furnish the materials of which she is constructed, may be lost and defeated by a transfer of the vessel by the owner, with whom they did make their contracts, and to whom they did furnish their work and materials, to a stranger with whom they had no contract or dealing? Can they, in this way, be turned from the person, with whom they did contract, to one they had nothing to do with? Can they, by an act of the other party, to which they were not consenting or privy, be deprived of the substantial security on the body of the vessel given to them by the law, and be turned over to the personal responsibility of a man who may not be worth a farthing? The person, with whom they made their contracts, replies, "I am not the owner of the vessel;" and the owner says to them, "I am not the person with whom you made the contracts." When the act of assembly speaks of masters and owners of a vessel, it is most manifest it intends the masters and owners at the time the contract was made, the work done, or the materials furnished, and not those who might afterwards become so. The lien on the vessel attached when the materials were furnished, and it cannot be afterwards divested by the act of one of the parties. In this case the ownership of Tees continued until after the brig was launched; until that time the sale to Harper was contingent, and the right of Tees in her as her owner was full and complete. If this construction of the act, upon a change of the

owners of a vessel, be sound, the same must be applied to a change of the master; and has it ever been suggested that the lien of a contract, made with the master of a vessel, is lost by the appointment of a new master?

Now as to the custom alleged in this case, to sustain this part of the defence, it was incumbent on the respondent to show one clearly and uniformly well known and understood, so that it must be presumed to have been part of the contract between the libellants and respondents, that the mechanics and materialmen of a vessel built in this port on speculation, are bound, by virtue of the custom and without any express agreement or understanding to that effect, to wait for the payment of their debts, until the vessel is finished and sold; and to forego and postpone all legal remedies and proceedings, for the recovery of their claims, until she is sold. No witness has testified to any such usage; on the contrary, the evidence rather gives a negative to any such pretension. The fair result of all the testimony upon this point is, that there is a sort of understanding that in such a case, that is, of a vessel built for sale, or, as it is called, on speculation, the mechanics and materialmen will not press for their debts until she is sold, because it is for their own advantage. It is an acquiescence in the delay of payment for their own advantage, and not by or under any obligation on their part, or any contract implied with their employer. No witness has said or suggested that, in such a case, the materialmen are bound by any usage or understanding of the trade, not to sue for their debts, or that they have abandoned or surrendered any of their legal rights or remedies, or given up their claim or lien on the vessel, or any other security for their debts. All beyond this must be the subject of a special arrangement or contract between the builder and the persons from whom he obtains his materials or labour. A number of witnesses have been produced to support this part of the defence; to wit, John Vaughan, Mr. Vandusen, W. Vanhorn, Samuel Green, John W. Eyre, with others; all experienced ship builders, or concerned in furnishing ships. Mr. Eyre said, "When a vessel is built on speculation, the understanding is, that the materialmen are to wait until she is sold." On a question from the court, in relation to a vessel built by himself on speculation or for sale, "my understanding was, that the materialmen were to wait a reasonable time to sell the vessel. I made an agreement with one of the men to wait six months." This is very different from the assertion of an uniform obligatory custom, which binds the materialmen to wait for the sale of the vessel, before they can claim a payment of their debts. But Mr. Eyre adds, "I thing the materialmen do not give up the vessel." If he is right in this opinion, and it can hardly be questioned, it

is absolutely destructive of the custom set up; entirely inconsistent with it. If these debts are not to be paid until the vessel is sold, and they are to be satisfied from the proceeds of the sale, it is clear, that this fund cannot be received until the vessel is delivered to the purchaser without incumbrance; and, of consequence, that she passes into the hands of the purchaser clear of the liens of the mechanics and materialmen, who will have only the personal security of their employer for their debts, and must depend altogether upon his ability or integrity to appropriate the money received by him to the discharge of their claims. Every witness rejects this consequence, and, of course, denies the premises from which it must follow. Other objections have been made to this custom, and counter evidence was produced, which it is unnecessary to examine, as, in my opinion, the testimony of the respondent entirely fails to support it.

Nothing remains but the appeal to the discretion of the court, not to order a sale when, from the pressure, as it is said, of the times, a sacrifice of the property will be made. I have no such discretion. The rights and remedies of a creditor, against the person or property of his debtor, are given to him by the law, and a judge has no power to resist them on speculative opinions concerning their effect. If they are denied, or interrupted, or delayed, it must be by the law, and not by the discretion of the judge; unless when the law imparts such a power to him. The sales by the sheriffs are not stopped by the courts for such reasons. We see every day sacrifices of property to a vast extent. If the pressure of the times distresses the debtor and depreciates his property, it also reaches the creditor, and makes it the more necessary for him to collect the debts that are due to him; and prevent, perhaps, a sacrifice of his own property to satisfy his creditors. This appeal for indulgence, if I had the power to afford it, could not prevail in this case. We have no explanation of the real situation or object of this sale of the brig by Tees to Harper. If it is a real bona fide transaction, and Mr. Harper has truly paid to Tees the purchase money, why has not Tees paid with it the just and undisputed claims of the libellants? He is the party respondent before the court, and the claimant who takes defence, and prays for this forbearance. On the contrary, if Mr. Harper has not paid the consideration money of the purchase, why does he not at once come forward and pay these claims, and take his credit for them in his settlement with Tees?

Decree: That the vessel be condemned and sold according to the prayer of the libel.

[NOTE. The vessel having been sold, and the proceeds brought into court, numerous claims were filed, which were referred to an auditor for liquidation, and the cause was subsequently heard on exceptions to his report. Case No. 6,090.]